VR

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERIMAX REAL ESTATE PARTNERS, INC., ) ) Plaintiff and Counterdefendant, ) ) v. ) RE/MAX INTERNATIONAL, INC., ) ) Defendant and Counterclaimant, ) ) ROARING FORK CAPITAL PARTNERS, INC., ) ) Defendant, ) ) v. ) ) HILDEBRANDO TORRES, ) ) Counterdefendant. ) | 05 C 5300 Honorable Charles R. Norgle |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

    Before the court are Defendant and Counterclaimant RE/MAX International, Inc.'s and Defendant Roaring Fork Capital Partners, Inc.'s Motions to Dismiss brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and Plaintiff and Counterdefendant Amerimax Real Estate Partners, Inc.'s request for Declaratory Judgment. For the following reasons, Defendants' Motions to Dismiss are granted in part and denied in part, Plaintiff's request for Declaratory Judgment is granted, and the court relinquishes jurisdiction on Plaintiff and Counterclaimant's remaining state law claim.

1

# I. BACKGROUND

## A. Facts

Plaintiff and Counterdefendant Amerimax Real Estate Partners, Inc. ("Amerimax") is an Illinois corporation engaged in the real estate brokerage business. The Illinois Secretary of State has issued Illinois Registration Nos. 94,571 and 94,995 for the marks "Amerimax Real Estate Partners" and "Amerimax" to Plaintiff. Counterdefendant Hildebrando Torres is the registered agent and president of Amerimax. Amerimax alleges that it uses the name and mark "Amerimax Real Estate Partners," as well as "Amerimax" in the Chicago metropolitan area and elsewhere to advertise and promote its real estate brokerage services.

Defendant Re/Max International, Inc. ("Re/Max") is a Colorado corporation in the business of, *inter alia*, franchising real estate brokerage offices. Defendant Roaring Fork Capital Partners ("Roaring Fork") is a Colorado corporation doing business in Illinois as "Re/Max Northern Illinois." Roaring Fork is a regional sub-franchisor of Re/Max in the Northern Illinois area, and is in the business of sub-franchising or licensing real estate brokerage offices, and providing real estate brokerage services, in Northern Illinois. Re/Max is the owner of United States Trademark registration certificates for the service marks "Re/Max" and "ReMax," along with various designs containing these marks. Re/Max also owns Illinois trademark registrations for the mark "Re/Max," and various designs containing this mark. Re/Max alleges that a network of over 100,000 franchisees and affiliated independent contractors and sales associates are authorized by Re/Max to use its marks and designs in providing real estate brokerage services throughout the United States and other countries.

Amerimax alleges that in March 1996, Re/Max filed two United States applications in an attempt to register "/Max" as a mark for real estate franchise and brokerage services. Amerimax further alleges that the United States Patent and Trademark Office refused to register these marks, and that Re/Max subsequently abandoned "/Max." Re/Max admits that it filed United States trademark applications for "/Max," and later abandoned those applications.

During June 2005, Amerimax alleges, Re/Max contacted Amerimax and asserted that Re/Max owned exclusive rights in "Max," and that Amerimax's use of its mark infringed Re/Max's rights. Re/Max demanded that Amerimax surrender its mark, and, *inter alia*, threatened litigation against Amerimax if Amerimax did not surrender its mark. After an exchange of correspondence between the parties' respective attorneys proved fruitless, the instant litigation ensued.

## B. Procedural History

Amerimax filed its Amended Complaint on March 3, 2006. The Amended Complaint added Roaring Fork as a Defendant, with leave of the court. Count I of the Amended Complaint requests a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, in which the court would declare that the word "Max" is a generic or common descriptive word, that Defendants have no exclusive rights to the word "Max," and that Amerimax is not infringing on any valid rights of Re/Max by using "Max" in its mark. Count I also requests an injunction prohibiting Defendants from, *inter alia*, pursuing litigation or other action which would attempt to preclude Amerimax's use of "Max." Count II of the Amended Complaint seeks, *inter alia*, cancellation of Defendants' United States marks, and alleges violations of federal antitrust laws. Count III of the Amended Complaint alleges violations of Illinois antitrust laws.

On March 31, 2006, Re/Max answered the Amended Complaint, and filed a counterclaim. Count I of the counterclaim alleges trademark infringement under federal law. Count II alleges unfair competition under federal law. Counts III-V allege trademark infringement and unfair competition under Illinois law. The counterclaim seeks, *inter alia*, to enjoin Amerimax from using its mark.

On that same date, Re/Max filed a Motion to Dismiss Counts II and III (the antitrust counts). Re/Max asserts that the Noerr-Pennington doctrine immunizes it from antitrust liability. On April 5, 2006, Roaring Fork filed its own Motion to Dismiss the entire complaint. Roaring Fork asserts that it has not engaged in any purportedly unlawful activity as to Amerimax, and joins in Re/Max's assertion that Noerr-Pennington immunizes it from liability. These Motions to Dismiss are fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

#### 1. The Declaratory Judgment Act

28 U.S.C. § 2201(a) provides in part,

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Declaratory Judgment Act is intended to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (Fed. Cir. 1993). A court should not consider a motion or suit for

4

declaratory judgment unless an actual controversy exists between the parties. Supreme Video, Inc. v. Schauz, 15 F.3d 1435, 1443 n.10 (7th Cir. 1994) ("The test for whether to grant a declaratory judgment is 'whether the facts alleged, under all the circumstances, show that there is a controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment.'") (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). Where a declaratory judgment suit involves trademarks,

> the Seventh Circuit has applied a two-pronged test for determining whether an actual case or controversy exists: (1) whether the defendant's conduct has created a real and reasonable apprehension of liability on the part of the plaintiff; and (2) whether the plaintiff has engaged in a course of conduct which has brought it into adversarial conflict with the defendant.

Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp., 80 F. Supp. 2d 815, 873 (N.D. Ill. 1999) (citing G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc., 873 F.2d 985, 990 (7th Cir. 1989)).

### 2. *Motions to Dismiss*

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. See, e.g., Jackson v. E.J. Brach Corp., 176 F.3d 971, 977-78 (7th Cir. 1999). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327 (7th Cir. 1999); see Leatherman v. Tarrant County, 507 U.S. 163, 168 (1993) (the Federal Rules of Civil Procedure allow for a liberal system of notice pleading); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (a complaint must only include "fair notice of what the plaintiff's claim is and the grounds upon which it rests").

> [P]leadings in federal court need not allege facts corresponding to each element of a statute. It is enough to state a claim for relief - and Fed. R. Civ. P. 8 departs from the old code-pleading practice by enabling plaintiffs to dispense with the need to identify, and plead specifically to, each ingredient of a sound legal theory. . . Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of.

Doe v. Smith, 429 F.3d 706, 708 (7th Cir. 2005).

When reviewing a motion to dismiss under Rule 12(b)(6), a court therefore merely looks to the sufficiency of the complaint. Autry v. Northwestern Premium Servs., Inc., 144 F.3d 1037, 1039 (7th Cir. 1998). In examining a motion to dismiss, a court should "accept all well-plead allegations in the complaint as true," Flannery v. Recording Indus. Ass'n of Am., 354 F.3d 632, 637 (7th Cir. 2004), and view "plaintiff's factual allegations and any inferences reasonably drawn therefrom in a light most favorable to the plaintiff." Yasak v. Ret. Bd. of the Policemen's Annuity Fund, 357 F.3d 677, 678 (7th Cir. 2004). Dismissal under Rule 12(b)(6) is proper when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Weizeorick v. Abnamro Mortgage Group, Inc., 337 F.3d 827, 830 (7th Cir. 2003). Put another way, "[d]ismissal under Rule 12(b)(6) is only appropriate when there is no possible interpretation of the complaint under which it can state a claim." Flannery, 354 F.3d at 637.

A court may dismiss a case pursuant to Rule 12(b)(1) where it lacks subject matter jurisdiction. See United Phosphorous Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003) (indicating that subject matter jurisdiction is "an issue that should be resolved early but must be considered at any stage of the litigation.").

## B. Declaratory Judgment

In Count I of its Amended Complaint, Amerimax requests a Declaratory Judgment that (1) the word "Max" is a generic or common word, (2) Defendants do not have exclusive rights to the word "Max," and (3) Amerimax is not infringing on Defendants' rights by using the word "Max" in its name and mark. Amerimax also requests injunctive relief prohibiting Defendants from, *inter alia*, pursuing litigation which would preclude Amerimax from using the word "Max."

The court must first confront the threshold issue of whether this matter presents an actual case or controversy. See Planet Hollywood, 80 F. Supp. 2d at 873. In this case, the court determines that it is presented with an actual case or controversy. Re/Max acknowledges that it has taken action to enforce its trademark, including contacting Amerimax in order to assert its exclusive rights in the Re/Max mark, and filing a trademark infringement counterclaim against Amerimax. Whether Roaring Fork, Re/Max's licensed subfranchisor, actually participated in these activities is irrelevant in determining whether an actual case or controversy exists between the parties. It is abundantly clear that Re/Max's activities have created a "real and reasonable apprehension of liability on the part of [Amerimax]," indeed, as the court has indicated, Re/Max has filed a counterclaim in which it asserts that Amerimax has infringed the Re/Max mark. See id. There is therefore no question as to whether Amerimax is now in "adversarial conflict with [Re/Max]." See id.

The court notes that in Count I of the Amended Complaint, it is not being asked to determine whether either party has a valid trademark, or into which category the parties' trademarks might fall. See Packman v. Chicago Tribune Co., 267 F.3d 628, 638 (7th Cir. 2001)

7

("The law recognizes five categories of trademarks, in ascending order of distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful."); see also Henri's Food Products Co., Inc. v. Tasty Snacks, Inc., 817 F.2d 1303, 1305 (7th Cir. 1987). Here, the court is merely being asked to determine whether "Max," as used as a suffix to the parties' trademarks, is in and of itself protectable as a trademark. For the following reasons, the court determines that "Max" is not protectable as a trademark. Many companies use "Max" as a prefix or suffix to their names, trademarks, products, or services. A cursory search of the internet revealed the following examples of businesses, products, and services containing this prefix or suffix: Business-max, Office Max, Car Max, Travel Max, TJ Maxx, StorageMax, Max Real Estate Network, Mad Max Enterprises, Mad Max Movies, Super Max Products, Super Max Razors, max.com, Rotax Maxchallenge, Mill-Max Manufacturing Corp., Rotomax Center-Pivot Phase Converter, VacUMax, E-Max Instruments, Inc., Truck Max, Zero-Max Motion Control Products, Scrubs-Max.com, ErgoMax Heat Exchangers, and, of course, Amerimax and Re/Max. Moreover, "Max" is a frequently used abbreviation for the commonly used word "maximum." The word "Max" is therefore ubiquitous in both commerce and ordinary language. Additionally, Re/Max admits that in 1996, it filed two United States applications in an attempt to register "/Max" as a mark for its real estate franchise and brokerage services. These applications were refused by the United States Patent and Trademark office, and Re/Max later abandoned the applications.

The court thus finds that Amerimax's use of "Max" or "max" in its name and mark does not infringe on Re/Max's mark, as Amerimax's use of its mark is "not likely to cause confusion among consumers." See Packman, 267 F.3d at 638 (to establish trademark infringement, a plaintiff must show that its mark is protectable, and that defendant's use of its mark is likely to

confuse consumers). The court also finds that Amerimax's use of its mark does not dilute Re/Max's mark. See Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 466 (7th Cir. 2000) (to establish trademark dilution, a plaintiff must show either that consumers may mistakenly associate its "famous mark with defendant's inferior or offensive product," or that plaintiff's mark appears "on a plethora of different goods or services.").

The court therefore grants Amerimax the following Declaratory Judgment. "Max" or "max" is a generic or common descriptive word commonly used as a prefix or suffix for business names, trademarks, products, and services. Defendants do not have any exclusive rights to "Max" or "max." Amerimax is not infringing or diluting any valid rights of Defendants by using "Max" or "max" in its name and trademark "Amerimax."

However, the court declines to grant Amerimax injunctive relief. The court is not convinced that injunctive relief is required in this case. The court is satisfied that the Declaratory Judgment it has issued, along with its decision on the remaining portions of Defendants' Motions to Dismiss, will speed along the ultimate resolution of this case, and that there is little danger that Defendants' challenged conduct will continue should Amerimax ultimately prevail on its state court claim, or in the counterclaim against it that remains before this court. See Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 748 (7th Cir. 1999) ("'The necessary determination [for granting injunctive relief] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'") (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).

Defendants' Motions to Dismiss are therefore denied as to Count I of the Amended Complaint. Amerimax is granted a Declaratory Judgment as specified above.

## C. The Federal Anti-Trust Count and the Noerr-Pennington Doctrine

In Count II of its Amended Complaint, Amerimax alleges that Defendants are attempting to monopolize the real estate market in the Chicago area by (1) attempting to register "Max" as a trademark, (2) seeking to enforce purportedly exclusive rights in "Max," (3) threatening litigation against Amerimax and other competitors, and (4) making "monopolistic utilization" of its mark in "those and other ways." Am. Compl., ¶ 40. Amerimax asks the court to, *inter alia*, order the United States Commissioner of Patents and Trademarks to cancel any existing United States marks including "ReMax" or "Re/Max," and to award Amerimax statutory damages in excess of $1.5 million.

It is well-established that entities holding trademarks may lawfully seek to protect those trademarks. "The Supreme Court has held that bona-fide attempts to influence the actions of a legislative body are immune from antitrust scrutiny regardless of any anticompetitive motives behind these attempts." Winterland Concessions Co. v. Trela, 735 F.2d 257, 263 (7th Cir. 1984) (citing Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) and United Mine Workers v. Pennington, 381 U.S. 657 (1961)). In 1972, "[t]he Court extended Noerr-Pennington immunity to good-faith attempts to secure legitimate goals through the use of the courts in California Motor Transport v. Trucking Unlimited, 404 U.S. 508." Id. The Noerr-Pennington doctrine, which is based on the First Amendment, therefore "immunizes from anti-trust liability bona fide lobbying and litigation efforts," whether or not these efforts are motivated by anticompetitive goals. W.H. Brady Co. v. Lem Products, Inc., 659 F. Supp. 1355, 1371 (N.D. Ill. 1987). Noerr-Pennington immunity, however, does not extend to "sham" litigation. Winterland, 735 F.2d at 263; W.H. Brady, 659 F. Supp. at 1371. "Sham" litigation occurs when

10

the purpose of litigation "is not to win a favorable judgment against a competitor, but to harass him, and deter others, by the process itself - regardless of the outcome - of litigating." Grip-Pak, Inc. v. Illinois Tool Works, Inc., 694 F.2d 466, 472 (7th Cir. 1982).

In this case, the court determines that Defendants's prelitigation activities are legitimate, bona fide efforts to protect the "Re/Max" mark, and that these activities are therefore immune from antitrust liability under the Noerr-Pennington doctrine.[1] It is undisputed that Re/Max holds a United States trademark in its name. It is also undisputed that Re/Max contacted Amerimax in an attempt to enforce its mark, and, when these efforts failed, threatened litigation against Amerimax. When Amerimax struck first and filed the instant action, Re/Max countersued. There is no indication in the record that this countersuit is a "sham." See Grip-Pak, Inc., 694 F.2d at 472. All of these actions were clearly undertaken by Defendants in an effort to protect the Re/Max mark, and, notwithstanding the fact that Amerimax has prevailed on Count I of the Amended Complaint, these actions are protected by Noerr-Pennington. See Winterland, 735 F.2d at 263; Spangler Candy Co. v. Crystal Pure Candy Co., 235 F. Supp. 18, 32 (N.D. Ill. 1964) ("a trademark holder has the right to defend himself against infringement" by engaging in prelitigation activity such as sending trademark policing letters to alleged infringers). Because Defendants' actions are immune from liability under Noerr-Pennington, the court grants Defendants' Motions to Dismiss as to Count II of the Amended Complaint.

---

[1] The court rejects without comment the allegation that Re/Max's attempt to register a trademark could be somehow construed as a violation of federal antitrust law.

11

### D. The State Law Antitrust Count

The court has dispositively determined that Amerimax is entitled to a Declaratory Judgment (Count I), and that Count II should be dismissed based on the Noerr-Pennington doctrine. The court therefore relinquishes jurisdiction over Count III, the state law antitrust claim. See 28 U.S.C. § 1367(c); Croplife America, Inc. v. City of Madison, 432 F.3d 732, 733-34 (7th Cir. 2005).

### III. CONCLUSION

For the foregoing reasons, the court hereby issues a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, that (1) "Max" or "max" is a generic or common descriptive word commonly used as a prefix or suffix for business names, trademarks, products, and services, (2) Defendants do not have any exclusive rights to "Max" or "max," and (3) Amerimax is not infringing or diluting any valid rights of Defendants by using "Max" or "max" in its name and trademark "Amerimax." Also for the foregoing reasons, the court denies Roaring Fork's Motion to Dismiss as to Count I of the Amended Complaint, grants Defendants' Motions to Dismiss as to Count II of the Amended Complaint, and relinquishes jurisdiction as to Count III of the Amended Complaint. IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: September 26, 2006